**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS A.C., | Civil Action No. 20-4656 (CCC) |
| Petitioner, | **OPINION** |
| v. | |
| THOMAS DECKER, et al., | |
| Respondents. | |

**CECCHI**, District Judge:

Presently before the Court is the motion of Petitioner, Carlos A.C. ("Petitioner"), seeking a temporary restraining order and preliminary injunction. ECF No. 38. Following an order to answer, the Government filed responses to the motion (ECF Nos. 39, 42, 47) to which Petitioner replied (ECF Nos. 41, 49). For the following reasons, Petitioner's motion is denied without prejudice.

**I. BACKGROUND**

Petitioner is a thirty-five-year-old native and citizen of El Salvador who entered the United States illegally at some point prior to April 2002. ECF No. 39-8 at 2; ECF No. 39-9 at 3. In April 2002, he filed an application for temporary protected status which was denied in June 2003. ECF No. 39-9 at 3. Petitioner thereafter remained in the United States illegally, amassing a criminal record including convictions for criminal contempt, false personation, and child endangerment offenses. Id. On October 23, 2019, Petitioner was arrested by fugitive operations officers, served with a notice to appear for removal proceedings, and taken into immigration detention pursuant to the Government's discretionary detention authority under 8 U.S.C. § 1226(a). Id. Petitioner

requested and received a bond hearing before an immigration judge, who denied Petitioner's request for release on bond on December 19, 2019. ECF No. 39-11. Although Petitioner was initially ordered removed in March 2020, on April 27, 2020, the immigration judge issued an order re-opening Petitioner's removal proceedings in light of apparent issues with the conduct of Petitioner's counsel at prior hearings. ECF Nos. 39-12, 39-13. On October 13, 2020, however, Petitioner was once again ordered removed. As Petitioner may yet appeal that order to the Board of Immigration Appeals, his order of removal is not yet administratively final, and he therefore remains detained under Section 1226(a) at this time.

Between October 2019 and September 3, 2020, Petitioner was detained at the Essex County Correctional Facility. ECF No. 47 at 2. On September 3, 2020, however, he was transferred to the Hudson County Correctional Facility due to space limitations at the Essex County facility. Id. Throughout his period of immigration detention, Petitioner has sought and received medical care on numerous occasions. Upon his initial intake into the Essex County facility in October 2019, Petitioner was given an initial intake screening with a nurse during which he denied any serious health issues. ECF No. 48-1 at 6–8. Petitioner also received a TB test and was referred for dental and mental health evaluations. Id. at 8. On November 1, Petitioner received a mental health intake screening and was cleared for placement in the general detainee population. Id. at 9–10. Petitioner received a mental health follow up two weeks later, during which Petitioner reported sciatic back pain but no mental health issues, resulting in Petitioner being encouraged to seek medical help for his pain. Id. at 13. On November 18, Petitioner sought treatment for the issue, resulting in his being provided ibuprofen and an exercise and warm compress regime to aid with his pain. Id. at 15–16. On December 1, he received another mental health follow up and reported no issues or discomfort. Id. at 17–18.

On January 6, 2020, Petitioner sought treatment for eye issues which were determined to be the result of conjunctivitis. Id. at 20. Petitioner was provided with medicated eye drops and instructed on proper care for the issue. Id. at 21–22. After reporting a fever and aches, Petitioner was seen again on January 25, 2020, and was provided pain and cold medication to treat his symptoms. Id. at 23. On March 13, 2020, Petitioner reported breathing difficulties and chest pain and was given an EKG. Id. at 25. Petitioner was provided pain medication, and was ultimately determined to have mild asthma after he reported having previously suffered from asthma as a child. Id. at 26–28. Petitioner was provided with albuterol nebulizer treatments and scheduled for a follow-up. Id. at 29–30. Following further diagnostic testing including a chest x-ray, Petitioner was provided an albuterol pump in case of further asthma issues. Id. at 30–35. Petitioner also reported further eye issues and foot fungus, for which he was given medication. Id. at 26.

On April 12, after reporting continuous coughing and a mild fever, Petitioner was again seen by medical staff. Id. at 39–40. Petitioner was diagnosed with having a viral syndrome and provided with cough and flu medicine, as well as antibiotics and pain medication. Id. Petitioner was moved into quarantine, and was subjected to daily monitoring following this diagnosis. Id. at 40–42. On April 15, Petitioner complained of increased asthma issues, but also claimed to have recovered from his viral issues and requested to be moved out of quarantine. Id. at 43. A doctor provided Petitioner with new asthma and related medication and ordered a chest x-ray, although Petitioner remained in quarantine. Id. at 43–45. Because Petitioner's x-ray indicated that he had contracted pneumonia, Petitioner was provided antibiotics on April 16. Id. at 46–47. Petitioner's vital signs continued to be monitored, and his treatment and medication were continued. Id. at 46–51. During a follow-up on April 20, Petitioner reported "feeling much better" with his new medication. Id. at 51–52. Petitioner's treatment continued, and Petitioner received a follow-up

chest x-ray on April 24 and COVID-19 testing on April 27, which indicated that Petitioner had contracted the virus. Id. at 53–58. Medical staff continued to monitor Petitioner's condition, and he received further chest x-rays and a chest CT scan in July which were negative for further signs of pneumonia. Id. at 58–70. Petitioner also received further treatment for his back pain and eye issues in May, June, and July of 2020. Id. After Petitioner reported an injured tooth on August 14, he was given pain medication and scheduled for a dental referral on August 18. Id. at 71–73. Although the dentist recommended removing a tooth, Petitioner refused, and he was instead provided antibiotics and pain medication. Id. at 77. On September 2, Petitioner also reported head and eye pain, and was diagnosed with having migraines for which he was provided medication. Id. at 82–85. The parties have not provided any information regarding any treatment sought or received by Petitioner following his transfer from Essex County on September 3, 2020.

## II. DISCUSSION

### A. Legal Standard

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted). In order to establish that he is entitled to injunctive relief in the form of a temporary restraining order and preliminary injunction,[1] Plaintiff must

---

[1] The Third Circuit has recently reiterated that the relief available via a temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," and that injunctive relief going beyond maintaining the status quo, such as the outright release of a detained alien, must instead normally be obtained through a motion seeking a preliminary injunction. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160-62 (3d Cir. 2020). The standard that applies to the grant of a temporary restraining order is essentially identical to that which is applied when a party seeks a preliminary injunction other than the requirement that a preliminary injunction can only be issued after an adversary has been provided notice and an opportunity to be heard. This Court's reasoning is therefore equally applicable to the extent that Petitioner's motion is seeking a temporary

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).

*Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). Plaintiff, as the party seeking a temporary restraining order and preliminary injunction, must first demonstrate a "reasonable probability of eventual success in the litigation." *Bennington Foods, LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation and quotation marks omitted). To satisfy this requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Ward*, 2012 WL 2341499 at *2 (quoting *Oburn v. Sapp*, 521 F.2d 142, 148 (3d Cir. 1975)).

To the extent that Petitioner's requested relief is immediate release from detention, the Third Circuit has historically authorized district courts reviewing habeas petitions by convicted prisoners to enter an order granting bail pending the resolution of the petitioner's habeas claims under certain extraordinary circumstances. *See, e.g., Lucas v. Hadden*, 790 F.2d 365, 367-68 (3d Cir. 1986). As bail pending a decision on a habeas petition is an extraordinary form of relief, it will only be available where the petitioner raises "substantial constitutional claims upon which he has a high probability of success, and . . . when extraordinary or exceptional circumstances exist

---

restraining order and a preliminary injunction. *See Wincup Holdings, Inc. v. Hernandez*, No. 04-1330, 2004 WL 953400, at *2 (E.D. Pa. 2004) ("the standard for determining the applicability of a temporary restraining order is identical to the test for determining the applicability of a preliminary injunction"); *see also Ward*, 2012 WL 2341499 at *1.

5

which make the grant of bail necessary to make the habeas remedy effective." *In re Souels*, 688 F. App'x 134, 135 (3d Cir. 2017) (quoting *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992). "[V]ery few cases have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor health or the impending completion of the prisoner's sentence." *Id.* (quoting *Landano*, 970 F.2d at 1239).

**B. Analysis**

In his motion seeking a temporary restraining order and preliminary injunction, Petitioner argues that he should be released from immigration detention because his conditions of confinement in light of the COVID-19 pandemic either amount to unconstitutional punishment or are indicative of the Government being deliberately indifferent to his medical needs. The Third Circuit recently reiterated the standards applicable to such claims in its decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020). As the Third Circuit explained, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325–27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens pending the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to

COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong interest in detaining aliens subject to removal proceedings and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the Government had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding pre-existing health conditions which may predispose those detainees to complications should they contract the virus. *Id.* at 327–29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in unfamiliar territory." *Id.* at 329–30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330–31.

In this matter, the Government has a legitimate interest in detaining Petitioner, and to show a likelihood of success on the merits of his punitive conditions claim, Petitioner must show either that the detention facilities and their staff acted with an express intent to punish him or that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of that interest. *Hope*, 972 F.3d at 325–29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007); *Daniel R.-S. v. Anderson*, No. 20-3175, 2020 WL 2301445, at *5–7 (D.N.J. May 8, 2020). As Petitioner has not alleged an express intent to punish him on the part of Respondents, to show a likelihood of success on the merits he must present facts indicating that his current conditions are arbitrary, purposeless or excessive in light of that clear interest in his detention.

Having reviewed the actions taken by both of the facilities[2] in which Petitioner has been confined during the COVID-19 pandemic to mitigate and alleviate the threat posed to its detainees by COVID-19, this Court finds that Petitioner has failed to show that his conditions of confinement have been arbitrary, purposeless, excessive, or unreasonable. In so concluding, this Court finds that both facilities have taken substantial, concrete steps towards mitigating and alleviating the threat posed to detainees by COVID-19, as well as ensuring prompt treatment for those who become infected. These protective actions on the part of the facilities include: operating significantly under capacity to increase social distancing capabilities; conducting intake medical screenings for all incoming detainees which evaluate the likelihood an incoming detainee may

---

[2] The parties have not presented arguments regarding whether the conditions to which Petitioner was exposed at Essex County have become moot in light of his transfer. This Court thus assumes, for the sake of this opinion, that Petitioner may attempt to make out his claims by aggregating all of the conditions to which he has been subject since the beginning of the COVID-19 pandemic. Because Petitioner fails to show a likelihood of success on the merits even under such an aggregate analysis, it is clear Petitioner's motion seeking a temporary restraining order and preliminary injunction would likewise fail if the conditions at Essex County were considered moot and this Court confined its analysis only to the conditions to which Petitioner has been subject since his September 2020 transfer.

have been exposed to COVID-19; the quarantining and treatment, including hospitalization where appropriate, of infected individuals; the separate detention, cohorting, and observation for fourteen days of individuals who have been exposed to those with COVID-19 but have yet to show symptoms; daily 24-hour sick call access; on-site and on-call medical staff at all times; the provision of masks and protective equipment to staff and detainees; increased cleaning, sanitization, and soap access for detainees; limiting entrance into the facility including by moving lawyer visits to non-contact rooms and requiring temperature screenings of all entering the facilities; and providing space to permit proper social distancing. *See* ECF No. 42-1; ECF No. 47-1. In light of these steps, it is clear that Petitioner's current conditions of confinement are rationally related to the Government's interest in detaining Petitioner, and thus pass constitutional muster, and that Petitioner has failed to show a likelihood of success on the merits of his punitive conditions claim. *See Hope*, 972 F.3d at 325–26.

In light of these concrete, significant steps taken by the facilities to mitigate the medical threat of COVID-19, and the extensive and continuous medical treatment Petitioner has received throughout his period of detention, Petitioner has likewise failed to show that the facilities have acted with deliberate indifference to his medical needs. Even acknowledging that the COVID-19 virus poses a threat to detainees, it is clear that the facilities in which Petitioner has been housed have sought to protect their detainees, and have in turn provided ample medical care to those such as Petitioner who were unfortunate enough to contract the virus despite these steps. Indeed, Petitioner's medical records clearly indicate that he received swift medical attention each time he reported an injury or illness; that medical staff adjusted, increased, or altered medication as needed in response to Petitioner's needs; and that staff kept careful observation, including through repeated chest x-rays and daily checks, of Petitioner's status during the period when he was

suffering from pneumonia which, like Petitioner's COVID-19 diagnosis, appears to have completely resolved. In light of the significant treatment he received and the numerous concrete steps taken by the facilities in which he has been detained, Petitioner has fallen "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" even in light of his chronic asthma and notwithstanding the fact that Petitioner did contract COVID-19. *Id.* at 330–31. Petitioner has thus failed to show a likelihood of success on the merits of his deliberate indifference claim and his motion seeking a temporary restraining order and preliminary injunction (ECF No. 38) is denied.[3]

### III. CONCLUSION

For the reasons expressed above, Petitioner's motion seeking a temporary restraining order and preliminary injunction (ECF No. 38) is **DENIED WITHOUT PREJUDICE**. An appropriate order follows.

**DATE:** November 10, 2020

**CLAIRE C. CECCHI, U.S.D.J.**

---

[3] As Petitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Tate v. Schember*, 809 F. App'x 64, 65–66 (3d Cir. 2020) ("[W]e will affirm because we agree that [plaintiff] has not shown a likelihood of success on the merits for the reasons that the District Court thoroughly explained."); *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 279 (3d Cir. 2020) (reversing grant of preliminary injunction because plaintiff "has not shown a likelihood of success on the merits"); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("Thus, a failure by the moving party to satisfy these prerequisites: that is, a failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction."); *see also Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *7 (D.N.J. Apr. 22, 2020) (declining to address remaining preliminary injunction factors after determining that movant had not demonstrated a likelihood of success on the merits of his claim).